**SO ORDERED.**

**SIGNED this 1st day of October, 2012.**



_____
Robert E. Nugent
United States Chief Bankruptcy Judge

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

IN RE: )
 )
BRADLEY D. ECK, ) Case No. 10-11034
 ) Chapter 7
         Debtor. )
_____)

### ORDER OVERRULING OBJECTION TO TRUSTEE'S FINAL REPORT

When chapter 7 trustees get appointed, they don't get to choose the cases they "take." Sometimes the expenses they incur in fulfilling their statutory and fiduciary duties to the court and the creditors meet or exceed what the estate ultimately recovers. Like lawyers in the world outside bankruptcy, they are not guarantors of results and, if the decisions they make in pursuing estate assets are reasonable, they should be paid (to the extent the funds exist) for their efforts. We measure the reasonableness of an attorneys' fees request in bankruptcy by considering the time spent by the lawyers, the rates charged, whether the services were necessary to the administration or beneficial at the time the service was rendered, whether they were performed in a reasonable amount of time

given their complexity and the importance and nature of the problems address, whether the lawyers have demonstrated skill and experience in bankruptcy cases, and whether the compensation is reasonable compared to that which comparably skilled lawyers might charge in a non-bankruptcy case.[1] After applying those factors to the fee application in this case, and after independently reviewing the application, the case file, and my own order denying the debtor a discharge for improper transfers and making a false oath,[2] I conclude that the Trustee and her counsel earned their fees in this tough case and more than satisfied the § 330(a)(3) standards.

Creditor Law Offices of Ray Hodge ("Hodge") objects to the Trustee's Final Report, filed in this matter by case Trustee, Linda S. Parks.[3] Though Hodge's objection claims that Ms. Park's firm's fees are "unreasonable," argument at the hearing revealed that Hodge's real beef is that the fees will consume a great deal of the estate's recovery, some $36,000 out of a total distributable amount of $58,750. Hodge has a claim for $18,611 in attorneys fees charged the debtor, Bradley Eck, in connection with legal services provided to Eck and his companies on various matters before the bankruptcy case was filed.[4] The firm's claim is a small part of an unsecured claim pool of nearly $650,000 and the Trustee anticipates a dividend, after the payment of administrative expenses and

---

[1] 11 U.S.C. § 330(a)(3).

[2] *Wieland v. Eck,* Adv. No. 10-5152 (Bankr. D. Kan.), Dkt. 56 (Memorandum Opinion entered February 14, 2012) and Dkt. 58 (Judgment on Decision).

[3] Dkt. 159 (report) and Dkt. 161 (objection).

[4] *See* Claim No. 12-2. In addition, Hodge filed Claim No. 13-1, also for attorney fees in the amount of $43,500, arising out of a 2010 consent judgment after Eck defaulted on a 2008 settlement agreement that resolved Hodge's filed attorney's lien. As near as the Court can tell, these are separate and distinct claims encompassing legal services for different periods of time; the number or amount of Hodge's claims, however, is immaterial for purposes of today's ruling.

priority claims, of 1.7 per cent. Hodge is correct that the Trustee will receive most of the estate in fees, but incorrect to assert that this is per se "unreasonable" or, as its pleading suggests, "unequitable."

*Facts*

Linda S. Parks, a long-time panel trustee in this Division, was appointed trustee of the estate that was created when, on April 7, 2010, the debtor, Bradley Eck, filed his third case in a 6-month period. He filed this one pro se, but soon after hired attorney James W. Wilson to complete his schedules and statement of financial affairs. Shortly after that work was done, Wilson withdrew because he was retiring, leaving Eck to find new counsel in midstream. Eck hired several counsel before settling on his current attorney Kenneth Jack. Unfortunately, Dr. Eck was less than forthcoming in his initial filings, requiring the Trustee to make considerable effort to determine the scope and extent of his assets. His conduct was questionable enough to prompt the United States Trustee to challenge his discharge and, in *Wieland v. Eck*, I concluded that Eck had failed to disclose an interlocking set of entities he had established to house his chiropractic practice and his other solely owned business enterprises.[5] Nor did he disclose all of the bank accounts these entities (mostly proprietorships and LLCs) held. In addition, Eck failed to disclose that he and his former wife retained an interest in their former homestead. He also never told anyone that after he filed, he deeded away his interest in the homestead to effectuate a short sale to unrelated third parties. This fact only came to light after his mortgage lender sought stay relief to allow it to complete the short sale.[6]

---

[5] *See* Adv. No. 10-5152, Dkt. 56, pp. 2-7.

[6] *See* Dkt. 28 filed May 19, 2010.

-3-

After securing court approval to employ her law firm, Ms. Parks and her counsel investigated these matters thoroughly.[7] They uncovered additional bank accounts and recovered a vehicle from the corporation that owned the car driven by the debtor and sold it for $10,000. She investigated the short sale of Eck's home and prosecuted an adversary proceeding against the purchaser and Eck's lenders, resulting in a compromise that netted the estate $48,750.[8] She assisted the United States Trustee by providing information and damning testimony in the objection to discharge trial. Most of this she undertook without any appreciable expectation of payment as the estate she was appointed to administer contained few assets on the date of the petition.

*Analysis*

Hodge does not question whether Ms. Parks' efforts in this case were taken in fulfillment of her duties under § 704. Nor could it. Once her investigation revealed the possible existence of recoverable assets, the Trustee was duty-bound to take reasonable efforts to recover them. Section 327 authorizes the Trustee to employ counsel to "represent or assist the Trustee" in carrying out her duties under title 11.[9] Section 330 allows me to award the Trustee or a professional person employed by her under § 327 reasonable compensation for actual and necessary services by her attorney as well as reimbursement for actual and necessary expenses. Section 330(a)(3) and (4) set out the criteria for determining whether the fees requested are reasonable and the services were necessary. Section 330(a)(3)(C) makes it clear that the benefit of the services she rendered is to be

---

[7] *See* Dkt. 46, Order granting application to employ Hite, Fanning & Honeyman L.L.P. entered June 30, 2010.

[8] *Parks v. Eck, et al.,* Adv. No. 10-5186 (Bankr. D. Kan.) filed August 31, 2010. *See* No. 10-11034, Dkt. 126 and 128, Motion for intended compromise and order granting motion on September 8, 2011.

[9] 11 U.S.C. § 327(a).

-4-

determined as of the time she rendered them, not in hindsight, as Hodge seems to claim. Section 330(a)(4) requires that the services not be unnecessarily duplicative, unlikely to benefit the estate, or unnecessary to the administration of the case.[10] Certainly when the Trustee learned that the debtor had sold his house to third parties for $290,000 a month after he filed this case, she was compelled to act. Likewise, when she learned Eck did not own the car he drove and claimed exempt, and she began to unravel Eck's and Eck's entities' bank accounts, she was required to determine whether funds in them had been diverted to others pre-petition and whether any of these assets could be recovered.

As Hodge does not point to any particular offending entries, but rather relies on a general allegation that the fees are somehow unreasonable, the Court reviewed the time records and concluded that the entries contained in them appear reasonable with one possible exception. There are a series of entries in June of 2011 for legal research and the drafting of a "memo" totaling 13.7 hours on an attorney-client privilege waiver issue that may be excessive.[11] As the hourly rate of the biller "TDM" (a paralegal) was $100, this would result in a reduction of the fee application of $1,370 at most. While it may have been preferable for the Trustee to have exercised some "billing judgment" on these entries,[12] the Court notes that an associate attorney at a higher hourly rate of pay may have accomplished this task in half the time resulting in roughly the same fees charged. Given this one isolated instance in a year's worth of billings, the Court is hard pressed to be too critical of the time spent related to the task identified in the entries and will allow these fees, particularly where

---

[10] *In re Kuhn*, 337 B.R. 668, 671-72 (Bankr. N.D. Ind. 2006).

[11] *See* Dkt. 159-2, pp. 9-10 – Four (4) entries for "TDM" dated 6/20, 6/21, 6/22 and 6/23.

[12] *See Case v. Unified School Dist. No. 233,* 157 F.3d 1243, 1250 (10th Cir. 1998); *In re Reconversion Technologies, Inc.,* 216 B.R. 46, 57 (Bankr. N.D. Okla. 1997)

-5-

Hodge has not complained specifically of the time spent by Parks and her law firm in pursuing these recoveries for the estate.

The balance of the Trustee's attorneys fees are proper and reasonable. Her extensive efforts were necessary to the estate's administration. Trustees executing their duties to the creditors and the court should not suffer any more constricted fee expectations than a non-bankruptcy attorney engaging in complex commercial work outside this forum would. The enactment of § 330(a)(3)(F) elevated bankruptcy attorneys' fees to the same rank and favor that non-bankruptcy lawyers have traditionally enjoyed. This Court declines an invitation to arbitrarily reduce a trustee's attorneys' fees when those services are documented, especially in a complex, records-intensive case like this. Remember that this debtor made pre-petition transfers that offended § 727(a)(2) as well as false oaths during the case, resulting in the loss of his discharge. Ms. Parks was "required to fish for the truth, costing unnecessary effort and expense that sap[ped] the recovery of creditors."[13] That effort was directly caused by the debtor and the Trustee's efforts were more than justified.

Nor am I inclined, at least in this case, to engage in an *ex post facto* modification of Parks' firm's engagement that I approved many months back. Her law firm signed up for the least advantageous attorney fee arrangement a lawyer can make: the "contingent-hourly" fee. In other words, if there were assets, her firm would receive its standard hourly rates (assuming the actions it took were reasonable), but get no compensation for risk of non-payment. If there weren't assets to distribute, the firm would receive nothing. I decline to reduce these fees when the actions they represent were reasonable and justified in the circumstances.

Hodge's objection to the Trustee's Final Report is OVERRULED and the final report is

---

[13] Adv. Dkt. 56, pp. 11-12.

Case 10-11034    Doc# 163    Filed 10/01/12    Page 6 of 7

approved. The Trustee is directed to distribute the assets in accordance with her report, thereafter closing the case.

# # #